**UNITED STATES of America,**
**Plaintiff,**

v.

**Donald Laird SIMONS, Defendant.**

**Crim. A. No. 70-27-E.**

United States District Court,
N. D. West Virginia.

Aug. 6, 1970.

Paul C. Camilletti, U.S.Atty., James F. Companion, Asst.U.S.Atty., Wheeling, W.Va., for plaintiff.

Horace S. Meldahl, Charleston, W.Va. for defendant.

MAXWELL, Chief Judge.

Defendant, Donald Laird Simons, has moved to quash the indictment charging him with failure to submit to induction into the Armed Forces of the United States in violation of 50 U.S.C.A. App. § 462(a). Specifically, defendant urges that Local Board No. 14, Morgantown, West Virginia, gave insufficient consideration to his requests for classification as a minister of religion (IV–D) and a conscientious objector (I–O).

Initially, defendant was ordered to report for induction on May 12, 1969, but

he successfully petitioned the State Director for postponement of the effective date of the order until the first induction after August 19, 1969. The request was granted to enable defendant to fulfill the requirements for a Master of Arts degree.

On July 29, 1969, defendant wrote to Local Board No. 14 requesting classification as a minister. Defendant enclosed a certificate of his ordination in the Universal Life Church, Inc., on June 15, 1969, and a charter for a church of that denomination in Morgantown, West Virginia, issued June 27, 1969. Because defendant requested reopening of his classification and reclassification while under a valid order to report for induction,[1] his petition must be measured against 32 C.F.R. § 1625.2 which states in pertinent part:

> "the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction (SSS Form No. 252) * * * unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant has no control."

Mulloy v. United States, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970) (dictum); United States v. Bittinger, 422 F.2d 1032, 1034 n. 6 (4th Cir. 1969). The Fourth Circuit has held that the duties of a local board under 32 C.F.R. 1625.2 vary according to the classification sought by the registrant.[2] Where the individual seeks recognition of supposed ministerial status and appropriate reclassification, after receiving the notice to report, the mere presentation of a prima facie case compels the local board either to reopen the existing classifica-

tion, or state the reasons for its refusal to reopen. United States v. Bittinger, supra at 1034.

The immediate question, therefore, is whether the defendant presented a prima facie case. After careful review of the defendant's selective service file, this Court concludes that defendant failed to make out the required prima facie case. As mentioned previously, he attached to his request for ministerial exemption a certificate of ordination and a charter for a new congregation of the Universal Life Church Inc. At no time did defendant submit evidence that he was a regular or duly ordained minister of religion under 50 U.S.C.A. App. § 456(g), 32 C.F.R. § 1622.43. Specifically, defendant failed to demonstrate that the ministry was, for him, a vocation rather than an avocation, Dickinson v. United States, 346 U.S. 389, 395, 74 S.Ct. 152, 98 L.Ed. 132 (1953), a ritual reality rather than a ruse.

Papers relevant to defendant's claim for IV–D classification reached Local Board No. 14 in connection with defendant's later application for classification as a conscientious objector. Although the local board had earlier rendered its decision, the information supplied by defendant supports that decision and this Court takes notice of the same. In a letter to the Board dated August 13, 1969, defendant stated:

> "This brings us to the summer of this year (1969). Some friends and I were discussing the Episcopal Church's 'Autumn Celebration' of last fall and how we had enjoyed getting together with people and 'experiencing each other's presence in a sense of peace and love'. Suddenly I was aware of the fact that this was the solution to my problem of relating reli-

---

1. Although defendant's induction was once postponed, this postponement did not invalidate the original notice to report which remained in full force and effect. 32 C.F.R. § 1632.4(d); Keene v. United States, 266 F.2d 378 (10th Cir. 1959); United States v. Wagner, 292 F.Supp. 1 (W.D.Wash.1967).

2. Where the registrant requests classification as a conscientious objector, having previously received a notice to report, a local board is usually under no duty to reopen his classification even if a prima facie case has been presented. See note 6 and accompanying text.

gion to everyday life. Man's peace and love, reflective of that of his Creator, could be *expressed*, as opposed to merely contemplated. I was disappointed to learn that the Episcopal Church had discontinued its 'celebration' program. I learned later however, that people in the area were exceedingly in favor of a new program of celebrations. I wondered if I could do something. I then read about the Universal Life Church and its doctrine of freedom of religion. This seemed ideal. I called the president of Universal Life Church and after discussing the nature of this new church I decided to become one of its ministers of peace. I knew people would frown on my minister's lisense (sic) because it was not bestowed as the result of formal theological training. But what was important that people understand was (and still is) that the Universal Life Church ordains ministers of peace and that in so far as *everyone* should be a minister of peace, no one should be refused immediate ordainment. On August 3, 1969, we had our first 'celebration' and a turn out of approximately 130 people. We consider it a successful initial effort and have planned another one for September 21." (Emphasis in original.)

It would be incorrect to suggest that only ministers of traditional or orthodox religions are entitled to IV–D classification, or even that a religious *leader* in a sect where all congregants are considered or may become, "ministers," is not entitled to a IV–D classification, Dickinson v. United States, supra; cf. Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970); United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1966). However, the infrequency of meetings[3] and defendant's failure to state the nature of his ministerial duties and their corresponding demands upon his time, suggests that the ministry was not defendant's vocation, as earlier noted.

■■ Finally, defendant in apparent recognition of the weakness of his claim for ministerial deferment did not protest its rejection by the local board to the State Director, although he did later press the refusal of the local board to classify him as a conscientious objector.[4]

---

3. A newspaper article submitted to the State Director by this defendant indicates that the intended September 21 celebration did take place and that another celebration was planned for October. The article, from an unidentified publication, also notes that "[t]he idea of gatherings like this started with the campus minister, but this one was called by two graduate drama students, Maurice Griffin and Don Simons."

4. Defendant has also moved to quash the indictment in this case on the grounds that he was denied the right to appeal the refusal of Local Board No. 14 to classify him either IV-D or I-O, following his personal appearance.

   Regarding defendant's right to appeal his claim of ministerial status, his Selective Service file indicates that the local board rejected that application on August 7, 1969. Defendant did not request a personal appearance until August 23, 1969, however, after his petition for exemption as a conscientious objector had been refused. The records relating to the personal appearance and defendant's letters to the State Director show conclusively that defendant contested only the refusal of his claim for conscientious objection status at the personal appearance. Therefore, any right to appeal flowing from his personal appearance would necessarily involve a claim raised at that personal appearance, and defendant could not appeal the denial of ministerial status.

   In addition, the Court agrees with the Government's conclusion that the provisions of 32 C.F.R. § 1624.2(e) providing that "[e]ach such classification or determination not to reopen the classification" after a personal appearance is appealable must be read in conjunction with the other sections of Part 1624, Title 32, Code of Federal Regulations. Specifically, the right to appeal would appear to follow only those personal appearances granted as of a right under 32 C.F.R. § 1624.1, requests for which must follow notice of classification by thirty days.

   It is not necessary to discuss defendant's right of appeal the local board's refusal to grant a I-O classification because of the Court's disposition of that claim.

On August 13, 1970, the defendant completed SSS Form No. 150 requesting classification as a conscientious objector. At that time defendant was still under a valid order to report for induction.[5] Eight days later, the local board refused to reopen defendant's classification and informed him that his induction was scheduled for September 8, 1969. Defendant subsequently requested an interview, which request was granted. A resume of the discussion between defendant and members of the local board, and additional material supportive of defendant's position is contained in the file. At the conclusion of the interview, the local board refused to reopen defendant's classification and defendant "appealed" to the State Director. The State Director, thereupon ordered defendant's induction postponed so that the local board could reconsider the case. The local board, after reflecting upon its earlier review of the case, plus the additional material which defendant sent to the State Director, again declined to reopen the classification. Defendant's refusal of induction and his indictment followed.

■ Ordinarily a request for I–O classification received after issuance of a valid notice to report for induction does not per se require a review by the local board. The Fourth Circuit has so held on numerous occasions while interpreting 32 C.F.R. § 1625.2, quoted above. United States v. Bowen, 421 F.2d 193 (4th Cir. 1970); United States v. Bittinger, supra, 422 F.2d at 1034 n. 6 (dictum); United States v. Helm, 386 F.2d 434 (4th Cir. 1967); cert. denied, 390 U.S. 958, 88 S.Ct. 1045, 19 L.Ed.2d 1153 (1968); United States v. Muhammad, 364 F.2d 223 (4th Cir. 1966). The rationale in these cases appears to be that a claim of conscientious objection raised subsequent to issuance of an order to report cannot meet the test of 32 C.F.R. §

1625.2 because "[b]elated development of conscientious objection is not such a change in status beyond the control of the registrant."[6] United States v. Muhammad, supra, at 224.

However, in United States v. Bowen, supra, the Fourth Circuit notes with apparent approval a Ninth Circuit decision.

"Miller v. United States, 388 F.2d 973 (9 Cir. 1967), held that a letter from state director of selective service to a local board suggesting an interview for a registrant making a late claim of conscientious objection freed the local board from the quoted language of 32 C.F.R. § 1625.2(a). Thus freed, the local board could not dismiss registrant's *prima facie* case by purporting not to reopen his classification." United States v. Bowen, supra, 421 F. 2d at 197.

The State Director has the authority to order a local board to reopen or reconsider a classification under 32 C.F.R. § 1625.3.

■ Thus, this Court finds that the letter from the State Director in this case which postponed the registrant's induction and suggested that the local board reconsider defendant's application for classification as a conscientious objector also released Local Board No. 14 from the restrictions of 32 C.F. R. § 1625.2. As the Fourth Circuit noted in *Bowen*, supra, reopening is required if the registrant presents a prima facie case, but not if the application is patently frivolous.

■ Reviewing defendant's SSS Form No. 150 and other materials relating to conscientious objection furnished to the local board, defendant has established a prima facie case for conscientious objection as this Court understands recent decisional law under 50 U.

---

5. See note 1, supra.

6. The interpretation of this regulation by the Fourth Circuit is in accordance with the weight of authority. Ehlert v. United States, 422 F.2d 332 (9th Cir. 1970).

The Second and Tenth Circuits have reached the opposite result. United States v. Stone, 422 F.2d 968 (10th Cir. 1970); United States v. Gearey, 368 F.2d 144 (2d Cir. 1966), cert. denied, 389 U.S. 959, 88 S.Ct. 335, 19 L.Ed.2d 368 (1967).

S.C.A. App. § 456(j). Welsh v. United States, supra; United States v. Seeger, supra; United States v. Broyles, 423 F. 2d 1299 (4th Cir. 1970); O'Brien v. Resor, 423 F.2d 594 (4th Cir. 1970); United States v. James, 417 F.2d 826 (4th Cir. 1969). Thus, the local board, having been given leave, by virtue of the State Director's communication, to examine defendant's prima facie claim, not conclusively refuted by information within the defendant's file, was under a duty to reopen defendant's classification. See Mulloy v. United States, supra. The conclusion here rests upon the import of the State Director's communication, rather than this Court's independent de novo review of defendant's Selective Service file.

Although the Court will not grant defendant's motion to quash the indictment at the present juncture of this litigation, the case will be continued for a reasonable period of time to give Local Board No. 14, Morgantown, West Virginia, a chance to review defendant's I–A classification. Defendant may, of course, be "reclassified" I–A. 32 C.F.R. § 1625.11. The Court wishes to stress that the finding contained herein, namely, that defendant had established a prima facie claim for conscientious objector status is in no way an intimation or suggestion that defendant should ultimately be classified I–O. A decision by the local board to reclassify defendant I–A might well be justified on the basis of material within its file indicating insincerity, the demeanor of defendant in his previous appearance before the board or the lateness of defendant's claim. While the local board should not deny defendant's claim solely because of its late arrival, United States v. Broyles, supra, considerable weight may be given to its tardiness and the fact here that it was preceded by a request for ministerial exemption. As the Supreme Court stated in reviewing the denial of I–O classification to a registrant who had pressed the claim late in the day and had earlier requested exemption from military service on other grounds,

"[t]his is not merely a case of a registrant's claiming three separate classifications; it goes to his sincerity and honesty in claiming conscientious objection to participation in war. It would not be mere suspicion or speculation for the Board to conclude, after denying Witmer's now-abandoned claims of farmer and minister, that he was insincere in his claim of conscientious objection. Even firemen become dubious after two false alarms." Witmer v. United States, 348 U.S. 375, 383, 75 S.Ct. 392, 396, 99 L.Ed. 428 (1955).

It is important however, that if Local Board No. 14 denies defendant the reclassification he seeks, the reasons for such denial be fully stated for the record. O'Brien v. Resor, 423 F.2d 594 (4th Cir. 1970); United States v. Broyles, supra; United States v. James, supra. Although this requirement of reporting of reasons and details of board conclusion is of recent vintage, it is now essential under the latest decisional law.

An order will be entered filing this memorandum and directing that Local Board No. 14, Morgantown, West Virginia, reopen defendant's classification and consider his request for a conscientious objector classification, such reconsideration efforts must include all administrative procedures as if the reopening were accomplished on the initative of the local board. The order shall also provide that the pending motion of defendant to quash the indictment be denied, without prejudice, however, to the presentation of a similar motion after the administrative review by the Selective Service System, as herein provided.

Copies of this memorandum are to be sent to the United States Attorney for the Northern District of West Virginia, counsel for defendant, Local Board No. 14, Morgantown, West Virginia, and the State Director of Selective Service. The United States Attorney is directed to keep the Court informed as to future developments while the case is before the Selective Service System.